UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOHN EUGENE HANING,**

      **Plaintiff,**

  v.                                **Civil Action 2:20-cv-5918**
                                       **Judge Sarah D. Morrison**
**COMMISSIONER OF SOCIAL**          **Magistrate Judge Chelsey M. Vascura**
**SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, John Eugene Haning ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Period of Disability benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 19), the Commissioner's Memorandum in Opposition (ECF No. 20), and the administrative record (ECF No. 15). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

                                         **I.**       **BACKGROUND**

Plaintiff filed his application for Title II Period of Disability Benefits on November 5, 2013, alleging, after amendment, that he became disabled on January 1, 2014. (R. 278–84.) On March 30, 2016, following administrative denials of Plaintiff's application initially and on reconsideration, Administrative Law Judge John M. Wood issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (R. 61–72.) Plaintiff filed an action in this

Court seeking judicial review of the Commissioner's decision. *See Haning v. Commissioner of Social Security*, No. 2:17-cv-278. On July 2, 2018, the Court remanded the case for further proceedings at the administrative level. (R. 1493–1503.)

Pursuant to this Court's remand order, the Appeals Council remanded this case to Administrative Law Judge M. Drew Crislip (the "ALJ"), who held a hearing on November 7, 2019. (R. 1434–60.) Plaintiff, represented by counsel, appeared and testified. Vocational expert Nancy Shapero (the "VE") also appeared and testified at the hearing. On November 27, 2019, the ALJ issued a decision denying benefits. (R. 1414–25.) On September 17, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. 1404–07.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In his Statement of Errors (ECF No. 19), Plaintiff asserts two contentions of error: (1) the ALJ erred in evaluating Plaintiff's symptoms; and (2) the ALJ's residual functional capacity is not supported by substantial evidence because he failed to order a consultative examination. (*Id.* at 6–11.)

## II.     THE ALJ'S DECISION

On November 27, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 1414–25.) At step one of the sequential

2

evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his date last insured of September 30, 2014. (*Id.* at 1416.) At step two, the ALJ found that, through his date last insured, Plaintiff had the severe impairments of chronic renal failure/interstitial cystitis, cervical disc disease, and chronic obstructive pulmonary disease ("COPD"). (*Id.*) He further found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 1417–18.)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequent[ly]. The claimant could sit six hours and stand and/or walk six hours in an eight-hour day. He required the ability to alternate from standing or walking to sitting for two to three minutes after every

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

3

>hour, but could remain on task during all position changes, though some would be covered by typical work breaks or time off task.  The claimant could occasionally operate hand and foot controls bilaterally.  He could occasionally reach overhead, but frequently reach in all other directions with the right upper extremity.  The claimant could never climb ladders, ropes, or scaffolds and crawl. He could occasionally climb ramps and stairs, balance (SCO definition of balancing as "maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces"), kneel, and crouch.  The claimant could frequently stoop.  He must have no exposure to unprotected heights, moving mechanical parts, dangerous machinery, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibration.  The claimant could occasionally operate a motor vehicle.  He could tolerate occasional exposure to humidity and wetness.  The claimant could work in moderate noise.  In addition to normal breaks, the claimant would have been off task 10 percent of time in an eight-hour workday.

(*Id.* at 1418.)

At step five of the sequential process, relying on the VE's testimony, the ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work, but that jobs existed in significant numbers in the national economy that Plaintiff could have performed, such as customer service, office helper, and cashier.  (*Id.* at 1423–24.)  The ALJ therefore concluded that Plaintiff had not been under a disability at any time from January 1, 2014, the alleged onset date, through September 30, 2014, the date last insured.  (*Id.* at 1424–25.)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

4

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV.  ANALYSIS

As set forth above, Plaintiff asserts two contentions of error: (1) the ALJ erred in evaluating Plaintiff's symptoms; and (2) the ALJ's residual functional capacity is not supported by substantial evidence because the ALJ failed to order a consultative examination. (Pl.'s Statement of Errors 6–11, ECF No. 19.) The undersigned considers each contention of error in turn.

**A.  The did not err in evaluating Plaintiff's symptoms.**

Plaintiff takes issue with two statements made by the ALJ during his analysis of Plaintiff's subjective statements about his symptoms. First, Plaintiff contends that the ALJ held him to an inappropriately high standard by requiring that Plaintiff's allegations be "entirely

5

consistent" with the remaining record evidence before they could be credited. (Pl.'s Statement of Errors, 8.) Second, Plaintiff contends that the ALJ improperly relied on Plaintiff's continuing use of cigarettes against medical advice to conclude that Plaintiff's impairments did not produce symptoms of the alleged intensity, persistence, or limiting effects. (*Id.* at 8–9.) Both arguments lack merit.

1. **Standards for Evaluation of Subjective Complaints**

For decisions rendered on or after March 28, 2016, the ALJ will evaluate a claimant's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability under SSR 16-3p. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996), which required the ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires the ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness. *See id.* at *11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). Although SSR 16-3p supersedes SSR 96-7p, "according to the very language of SSR 16-3p, its purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to substantially *change* them." *Brothers v. Berryhill*, No. 5:16-cv-01942, 2017 WL 2912535, at *10 (N.D. Ohio June 22, 2017). The rules were clarified primarily to account for the difference between a credibility determination, which necessarily impacts the entirety of a claimant's subjective testimony, and a consistency determination, which applies only to specific statements regarding symptoms. *See* SSR 16-3p at *2. It follows, therefore, that the procedures for reviewing an ALJ's credibility assessment under SSR 16-3p are substantially the same as the

6

procedures under SSR 96-7p. Accordingly, the undersigned concludes that existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

The ALJ's credibility determination "with respect to [a claimant's] subjective complaints of pain" is generally given deference. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review."). In addition, the Regulations list a variety of factors an ALJ must consider in

7

evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 16–3p; *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011), *adopted*, 2011 WL 3843703 (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision).

> 2. **The ALJ did not err by using boilerplate language stating that Plaintiff's allegations were "not entirely consistent" with the remaining record evidence.**

First, Plaintiff contends that the ALJ held him to an inappropriately high standard by requiring that Plaintiff's allegations be "entirely consistent" with the remaining record evidence before they could be credited. Plaintiff asserts the use of this "entirely consistent" standard violated SSR 16-3p, which requires only that the ALJ consider "the extent to which the symptoms can *reasonably* be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, at *2 (emphasis added). The relevant passage of the ALJ's decision reads as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. 1419.)

Plaintiff's reading of the ALJ's analysis is untenable. The ALJ's remark that Plaintiff's statements were "not entirely consistent" with the record does not logically imply that the ALJ incorrectly applied a standard requiring a finding of non-disability unless Plaintiff's statements were entirely consistent with the record. It appears to the undersigned that the ALJ was merely acknowledging that Plaintiff's subjective complaints were at least somewhat consistent with the record, while at the same time concluding that Plaintiff was nonetheless able to work during the

relevant period. Plaintiff does not develop or support this contention of error with argument or citation to authority. Further, courts have repeatedly found that use of this same "not entirely consistent" boilerplate language does not, by itself, constitute error. *See Baker v. Comm'r of Soc. Sec.*, No. 2:17-CV-784, 2020 WL 372681, at *13 (S.D. Ohio Jan. 23, 2020), *report and recommendation adopted sub nom. Baker v. Saul*, 2020 WL 1165622 (S.D. Ohio Mar. 11, 2020) (finding ALJ's use of "not entirely consistent" boilerplate consistent with pertinent regulations and rulings when the ALJ's decision contained "a robust review of the many examinations, studies, reports, and statements by Plaintiff that support his determination that Plaintiff's statements were not entirely consistent with the record as a whole"); *Cook v. Comm'r of Soc. Sec.*, No. 1:19-CV-1068, 2020 WL 7253307, at *8 (S.D. Ohio Dec. 10, 2020), *report and recommendation adopted*, 2021 WL 22522 (S.D. Ohio Jan. 4, 2021) (approving of use of "not entirely consistent" boilerplate when the ALJ "went well beyond that summation in explaining the inconsistencies she found between the claimant's statements and the medical evidence and other evidence in the record"). Similarly, the ALJ here substantively discussed the inconsistencies between Plaintiff's allegations and the objective medical evidence:

> In summary, while the claimant reported problems with his neck/right extremity at a consultative medical examination in January 2014, the results of the examination did not show that he would be unable to perform basic work activities at that time. He underwent cervical fusion in August 2014, and at post-operative visits, he was described as doing well, and the results of imaging were described as "superb." Although the claimant was diagnosed with COPD, he responded well to medications, and denied significant breathing symptoms on numerous occasions, despite the fact that [ ]he continued to smoke cigarettes against recommended advice. Finally, despite the claimant's allegations of disability, his multiple bladder procedures were prior to his amended alleged onset date, and his symptoms appear to have dissipated, as evidenced by progress notes during the period in question. However, in establishing the residual functional capacity, I considered the claimant's combined physical issues, and find a limitation to light exertional work with position change as identified, as well as postural, hand and foot controls, right upper extremity reaching, and environmental restrictions. I further included a time off task in addition to normal breaks of 10 percent during an eight-hour workday.

> This is consistent with the claimant's testimony that he went to the restroom five or six times a day, including evening hours, with each visit lasting four to five minutes total in 2014 and continuing. He stated he went to the restroom three times during the night. Accordingly, since the claimant acknowledged his five or six restroom breaks includes all hours except overnight, it stands to reason that not all would occur during working hours and, furthermore, breaks as he described them would generally adequately be covered by off task time/typical work breaks as reflected in his residual functional capacity.

(R. 1422.) The ALJ having provided a thorough explanation for his conclusion that Plaintiff's allegations are "not entirely consistent" with the objective medical evidence of record, the undersigned finds no error with the ALJ's use of the "not entirely consistent" boilerplate language.

### 3. The ALJ did not err by considering Plaintiff's continued cigarette smoking against medical advice.

Next, Plaintiff contends that the ALJ improperly relied on Plaintiff's continuing use of cigarettes against medical advice to conclude that Plaintiff's impairments did not produce symptoms of the alleged intensity, persistence, or limiting effects. (Pl.'s Statement of Errors, 8–9.) The ALJ did, indeed, note that Plaintiff continued to smoke cigarettes despite being advised to stop; but the ALJ also noted that even with Plaintiff's continued cigarette use, his COPD symptoms were stable:

> The claimant admitted that he smoked between one and two packages of cigarettes a day for about 40 years (Exhibit 20F, p.28). Despite being advised to stop smoking on numerous occasions, progress notes through the date last insured and slightly afterwards, indicate that the claimant continued to smoke. For example, in October 2014, he reported that he was continuing to smoke on a regular, daily basis. Yet, he denied shortness of breath, wheezing and coughing (Exhibits 9F, 11F, and 17F). On February 9, 2015, Dr. Yellamraju noted that the claimant's COPD was stable with inhalers (Exhibit 20F).

(R. 1420.)

Plaintiff argues that "[a]n ALJ may not rely on a claimant's tobacco use as evidence that her impairments did not produce pain/symptoms of the alleged intensity/persistence/limiting

10

effects unless an ALJ cites evidence that establishes that, if the claimant quit smoking, his impairments would improve and become non-severe." (*Id.* at 8, citing *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985) and *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000)). But that is not what happened here. The ALJ here noted that, despite Plaintiff's admission that he smoked 1–2 packs of cigarettes per day, Plaintiff denied shortness of breath, wheezing, and coughing and that Plaintiff's physician stated Plaintiff's COPD was stable with inhalers. (R. 1420, 1422.) Thus, the ALJ did not improperly conclude that a finding of non-disability was warranted because Plaintiff would be able to work if only he would quit smoking; if anything, it appears the ALJ concluded that Plaintiff retained the ability to work even while he continued to smoke, based on Plaintiff's physician's treatment notes and Plaintiff's own self-reports.

Moreover, even if the ALJ had discredited Plaintiff's allegations based on his cigarette use, SSR 16-3p "permit[s] the ALJ to consider evidence showing that the claimant is not following the prescribed treatment in weighing the claimant's claims of allegedly disabling symptoms." *Barncord v. Comm'r of Soc. Sec.*, No. 2:16-CV-389, 2017 WL 4160886, at *4 (S.D. Ohio Sept. 19, 2017). And, contrary to the out-of-circuit authority relied on by Plaintiff, the United States Court of Appeals for the Sixth Circuit has upheld an ALJ's consideration of a claimant's failure to quit smoking against medical advice in assessing the claimant's credibility. *See Sias v. Sec'y of Health & Hum. Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (per curiam) (finding that "[t]he claimant's style of life is not consistent with that of a person who suffers from intractable pain or who believes his condition could develop into 'a very quick life-threatening situation'" in part because the claimant smoked two packs of cigarettes per day against the advice of his doctor). Accordingly, the undersigned finds no error in the ALJ's consideration of Plaintiff's cigarette use.

11

**B.      The ALJ's residual functional capacity is supported by substantial evidence.**

Finally, Plaintiff contends that the ALJ's residual functional capacity ("RFC") is not supported by substantial evidence because the ALJ failed to order a consultative examination. This contention also lacks merit.

The determination of a claimant's RFC is an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e).  Nevertheless, substantial evidence must support the Commissioner's RFC finding.  *Berry v. Astrue*, No. 1:09-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).  The Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole.  42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i) (incorporating § 423(d) for Title XVI).  Consistently, Social Security Ruling 96-8p instructs that the ALJ's RFC assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work.  SSR 96-8P, 1996 WL 374184 (July 2, 1996).  An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (internal footnote omitted).

Here, Plaintiff contends that the ALJ's RFC is unsupported by substantial evidence because "the record is devoid of any RFC assessments from any physicians (treating or examining) whatsoever. . . . With the relative lack of opinion evidence in the file the ALJ should have sent Mr. Haning to a consultative examiner for an opinion as to his residual functional capacity or requested interrogatories from a medical expert." (Pl.'s Statement of Errors 10–11, ECF No. 19.)

The undersigned finds that the ALJ's RFC is supported by substantial evidence, including progress notes of Plaintiff's treating physicians, a consultative examination report, opinions of state agency reviewers, and Plaintiff's self-reports and testimony. (*See generally* R. 1419–22.) The ALJ acknowledged that Plaintiff had a biopsy at the Veterans Administration Medical Center ("VAMC") dated October 28, 2013, which showed chronic cystitis. (R. 1419, citing R. 1033.) On January 6, 2014, Plaintiff's VAMC physicians determined that Plaintiff's reported pain in his right groin was not related to cystitis and that he should treat his pain with Tramadol rather than long-acting opioids such as Vicodin (R. 1419, citing R. 1033). On March 6, 2014, Plaintiff reported to a VAMC doctor that he was self-catheterizing three times per week, his spasms were better, and he denied burning urination, blood in the urine, fever, or chills. (R. 1419, citing R. 1025–27.) The ALJ noted that treatment recommendations were "conservative, as laboratory testing was scheduled for six and eleven months, and he was advised to follow up in a year. Furthermore, a CT scan of the abdomen/pelvis taken on March 20, 2014, showed the claimant had no acute abnormality." (R. 1420, citing R. 1008, 1025–27.) Plaintiff reported "intermittent" self-catheterization on July 11, 2014, and in October 2014, he denied urgency, frequency, blood in urine, painful urination, leakage of urine, loss of bladder control, blood in stool, loss of bowel control, and abdominal pain. (*Id.*, citing R. 1048, 1078.)

As to Plaintiff's COPD, in March 2014, Plaintiff reported no shortness of breath, no chronic cough, and no wheezing. Plaintiff's VAMC physician observed no rhonchi, wheezing, crackles, or use of accessory muscles, upon examination and assessed Plaintiff's COPD as stable with inhalers. Plaintiff refused his physician's offer of medication, nicotine replacement, or counseling for smoking cessation. (*Id.*, citing R. 1025–27.) Imaging dated May 1, 2014, and July 29, 2014, showed COPD and mild pulmonary emphysema, but x-rays on August 13, 2014, showed no acute process with lungs expanded and free of active infiltrate. (*Id.*, citing R. 975, 1055, 1070.) As noted above, Plaintiff declined to stop smoking against advice from his physicians, but denied shortness of breath, wheezing, or coughing. (*Id.*, citing, *e.g.*, R. 953, 1078.)

Regarding spinal and right upper extremity complaints, the ALJ noted that Plaintiff underwent a consultative examination with Stephen Nutter, M.D., in January 2014, in which Plaintiff reported problems with his neck and right upper extremity, and Dr. Nutter opined that Plaintiff's ability to bend, stoop, lift, walk, crawl, squat, carry, travel, and push/pull heavy objects was at least moderately impaired. (R. 1420, citing R. 803–07.) The ALJ gave Dr. Nutter's opinions only partial weight due to the lack of definitive limitations, but agreed that Plaintiff was moderately impaired in these areas based on objective findings during Dr. Nutter's examination. (*Id.*) Notes from Plaintiff's treating physicians consistently documented Plaintiff's pain complaints, and imaging of Plaintiff's cervical spine on May 29, 2014, revealed notable degeneration. (R. 1421, citing R. 964–65.) Imaging on May 2, 2014 of Plaintiff's lumbar spine and right shoulder was unremarkable. (*Id.*, citing R. 1002.) On examination on July 11, 2014, Plaintiff had full range of motion in the cervical spine and right upper extremity, but demonstrated some weakness of the right upper extremity; Plaintiff had full strength in all other

14

extremities.  (*Id.*, citing 1048–52.)  Further imaging on July 29, 2014, demonstrated no acute fracture or malalignment, but revealed moderate multilevel changes in the cervical spine.  (*Id.*, citing R. 1054–56.)  As a result, on August 21, 2014, Plaintiff underwent anterior cervical fusion from C3-C7 and C6 corpectomy with a formal decompression from C5-C7 with no complications.  (*Id.*, citing R. 1060–69.)  At follow up on October 3, 2014, Plaintiff reported 50–75% improvement with surgery and was happy with his progress.  (*Id.* at 1421–22, citing R. 1077.)  On February 16, 2015, just a few months after the date last insured, Plaintiff's physician noted, "[h]is films look superb and so does he" and that Plaintiff would be seen only on an as-needed basis.  (*Id.* at 1422, citing R. 1152.)

Finally, the state agency medical consultants who reviewed the record on March 26, 2014, and May 16, 2014, indicated Plaintiff could perform light exertion with limited ability to push or pull, including operation of hand controls, with the right upper extremity; Plaintiff could never climb ladders, ropes, or scaffolds and crawl; occasionally climb ramps or stairs, stoop, kneel, and crouch; frequently balance; and occasionally reach overhead with the right upper extremity; Plaintiff had to avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards; and Plaintiff should have ease of access to toileting facilities.  (R. 1422, citing R. 195–97, 207–09.)  The ALJ gave these opinions only partial weight because evidence submitted after the State agency review of the record supports greater limitations, including the need to alternate from standing or walking to sitting as identified, as well as being off task ten percent of time in addition to normal breaks, which was provided in some part due to his alleged restroom visits.  (*Id.*)

Thus, the ALJ discussed in detail the available record evidence, which—considering the relevant period lasted only nine months—was ample.  These treatment notes, state agency

15

reviewer opinions, and Plaintiff's self-reports all constitute substantial evidence on which the ALJ could rely to craft Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1529(c)(2) (objective medical evidence is to be considered in evaluating symptoms, including pain); 404.1513a(b) (ALJs are required to consider findings by state agency medical consultants).

Plaintiff's argument that the ALJ was required to order a consultative examination due to a lack of RFC opinions in the record is unavailing. First, the pertinent regulation provides only that an ALJ *may* decide to purchase a consultative examination if he or she cannot get the information needed from a claimant's medical sources. 20 C.F.R. § 404.1519a(a). Courts have repeatedly rejected arguments that ALJs were required to order a consultative examination. *See, e.g., Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."); *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015) ("[N]one of these cases even remotely suggests that an ALJ must, as a matter of law, seek out a physician's medical opinion where one is not offered.") *Robertson v. Comm'r of Soc. Sec.*, 513 F. App'x 439, 441 (6th Cir. 2013) ("Given the considerable amount of medical evidence in the record concerning Robertson's cardiovascular problems and his resulting functional capability, including test results, physicians' notes, and opinion evidence from multiple physicians, and the lack of any significant inconsistencies in the evidence, the ALJ was not obligated to order a consultative examination with a cardiologist."). Plaintiff has made no showing that the available medical evidence in the record was insufficient for the ALJ to reach a determination. Furthermore, Plaintiff's assertion that the record contains no "RFC opinions" is simply inaccurate; the state agency reviewers offered opinions as to Plaintiff's functional limitations.

16

Accordingly, the undersigned finds the ALJ's RFC was supported by substantial evidence even in the absence of a Commission-ordered consultative examination.

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE